IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JONATHAN Z. and DANIEL Z., <br><br> Plaintiffs, <br><br> v. <br><br> OXFORD HEALTH PLANS, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' PARITY ACT CLAIMS** <br><br> Case No. 2:18-cv-00383-JNP-JCB <br><br> District Judge Jill N. Parrish <br><br> Magistrate Judge Jared C. Bennett |

This action arises under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Defendant Oxford Health Plans ("Oxford") administered claims for mental health and substance abuse benefits under plaintiffs Jonathan Z. and Daniel Z.'s (collectively, "Plaintiffs") employee group health benefit plan (the "Plan"). Plaintiffs alleged two causes of action: (1) recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) ("benefit denial claim") and (2) violation of the Mental Health Parity and Addiction Equity Act under 29 U.S.C. § 1132(a)(3) ("Parity Act claim"). *See* ECF No. 50. On July 7, 2022, the court issued its memorandum decision and order regarding Plaintiffs' and Defendant's motions for summary judgment. *See* ECF No. 164. The court disposed of the first claim by granting Defendant's motion for summary judgment on Plaintiffs' benefit denial claim and denying Plaintiffs' corresponding motion for summary judgment.

Plaintiffs' second claim alleged that several provisions in the Plan violated the Parity Act, which mandates that an insurance plan that provides for "both medical and surgical benefits and mental health or substance use disorder benefits" must not impose more restrictive treatment limitations on the latter than it imposes on the former. 29 U.S.C. § 1185a(a)(3)(A). The court entered a finding of fact that the following two provisions of the Plan violated the Parity Act: "(1) the wilderness therapy exclusion in the Plan constitutes a facial violation of the Parity Act and (2) the application of more stringent limitations on RTC [residential treatment center] care constitutes an as-applied violation of the Parity Act." ECF No. 164 at 42. The court then scheduled further briefing on the issue of equitable relief sought by Plaintiffs for their Parity Act claims. This memorandum decision and order responds to the parties' supplemental briefing. At bottom, the court GRANTS Oxford's motion for summary judgment on the Parity Act claims and DENIES Plaintiffs' corresponding motion for summary judgment.

## ANALYSIS

Plaintiffs essentially argue that the court should grant Plaintiffs declaratory relief on their Parity Act claims simply because the court has already held that a Parity Act violation occurred. Defendants respond that Plaintiffs' Parity Act claims fail for lack of Article III standing and because any declaratory relief would be moot. The court holds that Plaintiffs' Parity Act claims fail under both rationales.

### A.  *Constitutional Standing Requirements*

Oxford first argues that Plaintiffs have failed to establish constitutional standing. As with any other plaintiff, a plaintiff bringing a claim under any ERISA provision, including the Parity Act, must have standing pursuant to Article III of the United States Constitution. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020) ("There is no ERISA exception to Article III."). To have

standing under Article III, a plaintiff must demonstrate that (1) she has suffered an actual or threatened injury in fact; (2) the injury is causally connected to the conduct complained of; and (3) it is likely, and not merely speculative, that her injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Oxford contends that Plaintiffs have not proven an injury-in-fact sufficient to satisfy the first prong of Article III standing.[1] An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (quoting *Lujan*, 504 U.S. at 560). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "And that concrete injury 'must affect the plaintiff in a personal and individual way.'" *Laufer v. Looper*, 22 F.4th 871, 878 (10th Cir. 2022) (quoting *Spokeo*, 578 U.S. at 339).

Plaintiffs have simply put forward no evidence that they sustained a concrete injury. As discussed in the court's summary judgment order, the two portions of the Plan that violated the Parity Act did not control Oxford's decision to deny benefits to Daniel Z. Accordingly, Plaintiffs cannot point to monetary loss from a wrongful denial of benefits as an injury. Plaintiffs have pointed to no other evidence that could demonstrate an injury-in-fact to Plaintiffs. *See New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008) ("[A] plaintiff bears the burden of proving standing."). Indeed, Plaintiffs did not discuss standing at all in their supplemental briefing. And Plaintiffs cannot rely on Oxford's violation of the Parity Act alone to create standing. "Article III grants federal courts the power to redress harms that

---

[1] Because the court finds that Plaintiffs have not established the first prong of standing, it need not go on to consider causation and redressability.

3

defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Laufer*, 22 F.4th at 877 (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)). Because Plaintiffs have not demonstrated a concrete injury, Plaintiffs cannot prove that they have standing to prosecute Oxford's Parity Act infraction.

Of course, if there were a "credible threat of future injury," Plaintiffs could rely on that credible threat to establish standing for prospective relief. *See Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007). But Plaintiffs adduce no evidence that they remain Plan beneficiaries or that there is any likelihood that Daniel Z. would seek coverage for mental health services from the Plan. And Defendants submit evidence to the contrary. First, Oxford submits a declaration establishing that neither plaintiff is currently enrolled in the Plan at issue in this case. Jonathan Z. is no longer enrolled in any Oxford health plan and Daniel Z. is enrolled in a different Oxford plan. Second, Oxford submits evidence that neither plaintiff is currently subject to the violative language. Specifically, a UBH Supervisor of Clinical Appeals testified that "UBH has fully discontinued the use of its Level of Care Guidelines" that the court found unlawfully led to more stringent limitations on residential treatment center care than medical/surgical care. ECF No. 169 at 4.  And, Daniel Z., the only plaintiff currently subscribed to an Oxford health plan, has a plan that "contains an express exclusion for all forms of 'alternative treatments,' which is applicable to treatments for both medical/surgical and behavioral conditions," meaning his plan does not contain a wilderness exclusion that violates the Parity Act. ECF No. 168 at 3-4. Accordingly, there is no evidence of any credible threat of future injury to Plaintiffs.

Other courts have found that plaintiffs lack standing to challenge provisions of an insurance plan that violates the law when they no longer subscribe to the insurance plan. *See, e.g.*, *Reid v. BCBSM, Inc.*, 984 F. Supp. 2d 949, 953-54 (D. Minn. 2013) (finding no standing for prospective

4

declaratory and injunctive relief against insurer where plaintiff's health insurance policy had been terminated); *Walls v. Sagamore Ins. Co.*, 274 F.R.D. 243, 253 (W.D. Ark. 2011) (holding that plaintiff no longer insured by defendant lacked standing to pursue injunctive or declaratory relief); *Briscoe v. Health Care Serv. Corp.*, 337 F.R.D. 158, 162 (N.D. Ill. 2020) (concluding that two plaintiffs lacked standing to seek prospective injunctive relief against the plan's alleged violation of the Affordable Care Act because they were no longer members of the plan); *c.f. J.T. v. Regence BlueShield*, 291 F.R.D. 601, 611 (W.D. Wash. 2013) (finding injury-in-fact where plaintiff remained on the plan and doctors prescribed her a course of treatment that the plan refused to promise to cover, allegedly in violation of the Parity Act). Accordingly, the court finds that Plaintiffs have no standing to pursue declaratory relief on their Parity Act claims.

### B.    *Declaratory Relief Requirements*

Oxford also argues that Plaintiffs have failed to prove that declaratory relief will settle any controversy or determine any future rights or obligations. For largely the same reasons discussed above, Oxford is correct.

In order for the court to grant declaratory relief, "a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."[2] *Sensitron, Inc.*

---

[2] At least one court has held that "[a]n ERISA beneficiary is allowed to bring a civil action to 'clarify his rights to future benefits under the terms of the plan'" and that "a beneficiary of an ERISA plan need not demonstrate a threat of future harm in order to obtain injunctive relief requiring a plan fiduciary to comply with its statutory duties." *A.H. ex rel. G.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL 2684387, at *8 (W.D. Wash. June 5, 2018); *see also A.Z. ex rel. E.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1077 n.11 (W.D. Wash. 2018) (holding that "an ERISA beneficiary may bring a civil action to clarify her rights to future benefits under a plan and may do so without showing a threat of future harm"). But in both *A.H.* and *A.Z.*, the plaintiffs were plan beneficiaries at the time of the lawsuit. *See A.Z.*, 333 F. Supp. 3d at 1072 ("A.Z. is a beneficiary of the Plan."); *A.H.*, 2018 WL 2684387, at *1 ("He is a beneficiary of the Plan based on his mother's employment at Microsoft.").

*v. Wallace*, 504 F. Supp. 2d 1180, 1184 (D. Utah 2007) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)); *see also Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) ("[I]n the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant.'"); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) ("Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit."). And Plaintiffs must show more than "[p]ast exposure to illegal conduct . . . unaccompanied by any continuing, present adverse effects." *Jordan*, 654 F.3d at 1024 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496-97 (1974)); *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 883 (10th Cir. 2019) (rejecting declaratory relief where the declaration "would serve merely as 'a retrospective opinion that [plaintiff] was wrongly harmed by the [defendant]" (citation omitted)). Moreover, the declaratory relief must "affect[] the behavior of *the defendant toward the plaintiff*." *Jordan*, 654 F.3d at 1025 (citation omitted). In other words, "an action for declaratory relief [i]s moot when the requested declaration involve[s] conduct not likely to recur." *GF Gaming Corp. v. City of Black Hawk*, 405 F.3d 876, 883 (10th Cir. 2005) (citing *Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256-57 (10th Cir. 2004)).

But, again, Plaintiffs have offered no argument that declaratory relief would address a potential future injury or affect Oxford's future behavior toward either. As noted above, Jonathan Z. is no longer a beneficiary of an Oxford plan. And Daniel Z. is a beneficiary of a different Oxford plan that does not contain a wilderness exclusion specific to mental health benefits or apply a more stringent criteria to a mental health claim than to analogous medical/surgical care. Accordingly, any declaratory relief issued by the court would be moot.

*    *    *

Oxford argues that the result here "does not conflate all mental health parity claims with wrongful denial of benefits claims." ECF No. 167 at 11. And Oxford is correct. The court's ruling here does *not* create a blanket rule that a plaintiff must first prove a wrongful denial of benefits claim before she can succeed on a Parity Act claim. Circumstances exist where an insurance plan could rightfully deny benefits, but an insured could still face a substantial likelihood of harm in the future, i.e., if the insured remains on the same insurance plan and the insurance contract terms remain the same.

But these circumstances are narrow. Individuals often change jobs, and, thus, insurance plans. And insurance plans regularly change their terms. Given the amount of time that it takes for a case alleging a violation of the Parity Act to develop from the initial violation to the judgment stage, the reality is that, in many cases, a Parity Act claim will effectively collapse into the denial of benefits claim.[3] In other words, if a plaintiff is no longer on the same insurance plan, or if the relevant terms of the insurance plan have changed, the plaintiff will have to first establish a denial of benefits claim in order to overcome standing and mootness challenges to her Parity Act claim. Indeed, the court notes that several steps, such as exhausting administrative remedies and producing the administrative record, require actions by the insurance company in which the insurance company could intentionally prolong the process of getting a case to the summary judgment stage in order to then raise standing and mootness challenges. These perverse incentives are unsettling.

---

[3] For instance, in one of the claims involved in this case, Plaintiffs received the initial EOBs denying Daniel Z. coverage at Open Sky around May 7, 2015. *See* ECF No. 164 at 7. Yet, this case did not reach the summary judgment stage until late 2021 and the court did not issue an opinion regarding summary judgment until July 7, 2022. Unsurprisingly, both Plaintiffs were on different insurance plans by the time the court received the present briefing—over seven years after the initial treatment and denial.

7

Accordingly, the court acknowledges the difficulty Plaintiffs face. And the court recognizes that the outcome of this case may be difficult to square with Congress's goal in passing the Parity Act of addressing "years of discriminatory practices in plan design," H.R. REP. NO. 110-374, pt. 3, at 12 (2008), by achieving "parity in mental health benefits . . . because of the huge impact that mental illness and substance abuse has on our society," S. REP. NO. 110-53, at 2 (2007). But basic legal principles regarding standing and mootness prohibit the court from entering a declaratory judgment here.

## CONCLUSION

The court GRANTS Defendant's motion for summary judgment as to Plaintiffs' Parity Act claims and DENIES Plaintiffs' corresponding motion for summary judgment.

DATED August 9, 2022.

BY THE COURT

                                  
Jill N. Parrish
United States District Court Judge